

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| CYNTHIA IRIS JENSEN, | |
| Plaintiff, | CV 17-108-H-JTJ |
| vs. | **MEMORANDUM AND ORDER** |
| NANCY BERRYHILL, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Cynthia Iris Jensen (Jensen) brought this action to obtain judicial review of the final decision of the Acting Commissioner of the Social Security Administration (Commissioner), denying her application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Jensen is proceeding *pro se*.

## JURISDICTION

The Court possesses jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Jensen resides in Lewis and Clark County, Montana.

29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). Both parties have executed a Consent form authorizing the undersigned to conduct all proceedings in this matter and enter judgment. (Doc. 15).

## BACKGROUND

Jensen is 52 years old. (Doc. 11 at 28). Jensen is well educated. Jensen possesses a juris doctorate degree in law. (Doc. 11 at 73). Jensen has served as an active duty member of the United States Air Force intermittently from August 17, 2000, through September 7, 2007. (Doc. 11 at 492). Jensen has past work experience as an employment training specialist, personnel clerk, and claims examiner with the Department of Labor in Alaska. (Doc. 11 at 27, 75, 119).

The Veterans Administration (VA) has determined that Jensen is 100% disabled. (Doc. 11 at 25; 491-493). The VA determined that Jensen's impairments included major depression disorder, posttraumatic stress disorder (PTSD), panic disorder, gastroesophageal reflux disease with irritable bowel syndrome, and migraine headaches. (Doc. 11 at 314-15). The VA declared Jensen unemployable as of January 27, 2014, due to her disability. (Doc. 11 at 314). Jensen receives VA disability benefits. (Doc. 11 at 491).

Jensen filed her application for disability and disability insurance benefits on September 13, 2014. (Doc. 11 at 14). Jensen alleged a disability onset date of

July 24, 2013. *Id.* Jensen alleged that she became disabled due to fibromyalgia with restless leg syndrome, severe widespread chronic pain, severe depression, panic attacks, emotional sensitivity, anxiety disorder, chronic fatigue, plantar fascitis, PTSD, sensory sensitivities, memory loss, difficulty concentrating, sleep disorder, ADHD with cranial nerve dysfunction, arthritis, anemia, digestive disorder, nausea, migraines, bloating irritable bowel syndrome, diverticulitis, acid reflux and carpel tunnel syndrome. (Doc. 11 at 335). Jensen's claim was denied initially on April 14, 2015, and on reconsideration on June 22, 2015. (Doc. 11 at 141, 158).

An administrative law judge (ALJ) conducted a hearing on Jensen's application for social security benefits on December 23, 2015. (Doc. 11 at 14). The ALJ conducted a supplemental hearing on March 29, 2017. *Id.* The ALJ issued her decision on May 22, 2017. (Doc. 11 at 29). The ALJ determined that Jensen did not qualify for disability or disability insurance benefits. *Id.*

Jensen requested that the Social Security Administration (Administration) review the ALJ's decision. The Administration denied Jensen's request. (Doc. 11 at 1). The Administration's denial made the ALJ's decision the final decision of the Commissioner.

Jensen filed the present action on November 20, 2017. (Doc. 2). The

matter has been fully briefed. (Docs. 17, 20). The Court is prepared to rule.

## STANDARD OF REVIEW

The Court's review in this matter is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

## DISABILITY DETERMINATION

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but

also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A), (B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof under steps one through four. *Bustamante*, 262 F.3d at 954. The Commissioner bears the burden of proof under step five. *Id.* The five steps of the inquiry are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not

disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954.

### A. ALJ's disability determination in this case

At step one, the ALJ determined that Jensen had not engaged in substantial gainful activity from her alleged onset date of July 24, 2013, through December 31, 2016, the date she was last insured. (Doc. 11 at 16).

At step two, the ALJ found that Jensen had the following severe impairments: attention deficit/hyperactivity disorder, panic disorder, PTSD, major depressive disorder, degenerative joint disease, fibromyalgia, and osteoarthritis of the right shoulder. (Doc. 11 at 16).

At step three, the ALJ found that Jensen did not possess an impairment, or combination of impairments, that met or was medically equal to one of the listed impairments. (Doc. 11 at 18).

Before considering step four, the ALJ determined Jensen's residual functional capacity. The ALJ determined that Jensen possessed the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) subject to the following limitations: 1) Jensen can lift 25 pounds occasionally and 20 pounds frequently; 2) Jensen can sit for 6 hours in an 8-hour workday;

3) Jensen can stand or walk for 6 hours in an 8-hour workday; 4) Jensen can frequently climb ramps and stairs, can occasionally climb ladders, ropes or scaffolds; 5) Jensen possesses unlimited balance; 6) Jensen can frequently stoop, kneel, crouch and crawl; 7) Jensen can frequently reach overhead with her right upper extremity; 8) Jensen must avoid concentrated exposure to vibration; 9) Jensen is able to understand, remember, and carry out simple as well as detailed tasks; 10) Jensen cannot perform work in which contact with the general public is an essential element of any task, but Jensen may have incidental contact with the general public; 11) Jensen is able to work in a predictable and routine work place environment; and 12) Jensen is able to have superficial contact with coworkers, but she cannot perform tandem tasks or tasks involving a cooperative team effort. (Doc. 11 at 20).

At step four, the ALJ presented a hypothetical question to a vocational expert. The ALJ asked the vocational expert to consider a hypothetical person with the same age, work experience and educational background as Jensen who possessed the limitations described above. (Doc. 11 at 27, 119-120). The ALJ asked the vocational expert whether such a person could perform Jensen's past work as an employment training specialist, personnel clerk, and claims examiner. (Doc. 11 at 120). The vocational expert responded that the hypothetical person

7

could not perform Jensen's past work. *Id.*

At step five, the ALJ determined that Jensen was not disabled. (Doc. 11 at 28-29). The ALJ determined that Jensen possessed the residual functional capacity to perform work that existed in significant numbers in the national economy. *Id.* The ALJ determined that Jensen possessed the residual functional capacity to work as product assembler, cleaner/housekeeper, and packing line worker. (Doc. 11 at 28).

**B.     Jensen's Objections to the ALJ's Disability Determination**

Jensen argues that the Court should reverse the Commissioner's decision and remand this case to the Commissioner for an award of benefits. (Doc. 17 at 25). Jensen argues that the Commissioner's decision should be reversed for the following reasons:

1. The ALJ erred by failing to provide sufficient reasons for discounting her testimony regarding the intensity, persistence and limiting effects of her symptoms;

2. The ALJ failed to properly consider the statements submitted by her husband and daughter.

3. The ALJ erred when she determined at step two that her digestive track issues and her migraine headaches did not qualify as severe impairments;

4. The ALJ erred by failing to give proper weight to the 100% disability rating assigned to her by the Veterans Administration; and

8

5. The ALJ erred by failing to consider all of her physical and mental impairments when she determined her residual functional capacity.

(Doc. 17 at 5-25).

## C. Commissioner's Position

The Commissioner argues that the Court should affirm the ALJ's decision because the ALJ's decision was based on substantial evidence and was free of legal error.

## DISCUSSION

### A. Jensen's Testimony Regarding her Symptoms and Limitations

Jensen testified during the hearings before the ALJ in December 2015 and March 2017. Jensen testified, in December 2015, that she experienced loss of bowel control and uncontrollable diarrhea, that she experienced pain from multiple sources, and that she experienced eight to ten migraines per month. (Doc. 11 at 73-74, 77-118). Jensen testified, in March 2017, that she suffered from depression, back pain, carpal tunnel syndrome and digestive problems, and that she had difficulty completing daily activities. (Doc. 11 at 43-55). The ALJ discounted Jensen's testimony regarding the intensity, persistence and limiting effects of her symptoms. (Doc. 17 at 6-15, 17-25). Jensen argues that the ALJ erred when she discounted her testimony.

An ALJ must engage in a two-step analysis when determining whether a claimant's testimony regarding her subjective pain or symptoms is credible. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of her symptoms only if the ALJ offers "specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must identify the portion of the claimant's testimony she finds not credible and describe the evidence that undermines the claimant's testimony. *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

An ALJ may consider the following factors in determining whether a claimant's testimony is credible: the claimant's reputation for truthfulness; inconsistencies in the claimant's testimony; inconsistencies between the claimant's testimony and her conduct; the claimant's daily activities and work record; and the testimony of physicians and third parties concerning the nature, severity, and

effect of the claimant's alleged symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

Here, the ALJ found that Jensen had, in fact, presented objective medical evidence of impairments that could reasonably be expected to produce some of the pain and symptoms she alleged. (Doc. 11 at 21). The ALJ stated, however, that she discounted Jensen's testimony regarding the limiting effects of her impairments because the testimony was not consistent with the medical evidence. (Doc. 11 at 21). The ALJ stated that she discounted Jensen's testimony regarding migraine headaches because Jensen did not describe migraine headaches as an active problem when she was seen by a physician on December 16, 2015, and she had told a health care provider on February 13, 2017, that she was not experiencing headaches. (Doc. 11 at 22, 1896, 1938).

The ALJ stated that she discounted Jensen's testimony regarding the limiting effects of her physical conditions and pain because Jensen's testimony was inconsistent with physical examination findings of her health care providers, and her daily activities. The ALJ noted that Jensen's treating providers had often documented that Jensen's "musculosketal examinations" were normal, that Jensen's sensation, motor skill, and coordination functions were normal, that Jensen's extremities were normal, and that Jensen "appeared in no acute distress"

during her medical appointments. (Doc. 11 at 22).

With respect to Jensen's daily activities, the ALJ noted that Jensen had reported to her health care providers that she provided care for her grandchildren on a regular basis, that she had worked as a volunteer attorney for veterans, that she played poker with friends on a monthly basis, that she had traveled to Florida by airplane on multiple occasions, and that she was able to travel long distances by automobile. (Doc. 11 at 24). The ALJ further noted that Jensen's treatment providers had encouraged her to continue her yoga classes and to increase her level of physical activity. *Id.*

The ALJ stated that she discounted Jensen's testimony regarding the limiting effects of her mental conditions because they were inconsistent with the treatment notes of her mental health providers. The ALJ noted that Jensen's treating providers often reported "no notable psychiatric symptoms" and had described Jensen's presentation as "normal." (Doc. 111 at 22). The ALJ further noted that Jensen had obtained good results on mental status examinations. (Doc. 11 at 23).

The ALJ provided specific, clear and convincing reasons for discounting Jensen's testimony about the severity of her symptoms. The ALJ did not commit legal error.

**B.      Statements Submitted by Jensen's Husband and Daughter**

In 2015, Jensen's husband Steven Jensen and Jensen's daughter Sarah Mabius each completed a "Lay Witness Statement Questionnaire" describing Jensen's daily activities. (Doc. 11 at 412-422). Mr. Jensen and Ms. Mabius stated that Jensen had difficulty performing daily tasks. *Id.* Mr. Jensen reported that Jensen had difficulty standing or walking for more than fifteen minutes without experiencing pain, and that Jensen was unable to ride in a vehicle for more than ten minutes without experiencing discomfort. (Doc. 11 at 413). The ALJ gave Mr. Jensen's statements "little weight." (Doc. 11 at 24). The ALJ gave Ms. Mabius's statements "some weight." *Id.* Jensen argues that the ALJ erred when she discounted the statements of her husband and daughter. (Doc. 17 at 6).

An ALJ may discount the testimony of a lay witness so long as she provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Here, the ALJ stated that she discounted the statements of Mr. Jensen and Ms. Mabious regarding Jensen's physical limitations for the following five reasons: 1) the statements were inconsistent with "physical examination findings" of Jensen's health care providers; 2) the statements were inconsistent with observations of her health care providers; 3) the statements were inconsistent with Jensen's "minimal psychiatric symptoms;" 4) the statements were inconsistent

13

with Jensen's "performance on mental status examinations;" and 5) the statements were inconsistent with Jensen's daily activities. (Doc. 11 at 24). The reasons provided by the ALJ were germane. An ALJ may discount lay witness statements that are inconsistent with the medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). No error occurred.

### C. Digestive Track Issues and Migraine Headaches

Jensen argues that the ALJ erred when she determined at step two that her digestive track issues and migraine headaches were not severe impairments. (Doc. 17 at 7-11).

An impairment is "not severe" for purposes of step two when the medical evidence establishes only a slight abnormality or a combination of slight abnormalities that would not significantly limit a claimant's ability to do basic work activities. *Smolen*, 80 F.3d at 1290. Basic work activities are the "abilities and aptitudes necessary to do most jobs." *Id.* Basic work activities include "walking, standing sitting, lifting, pushing, pulling, reaching, carrying [and] handling." *Id.* The claimant bears the burden of establishing that an impairment is severe for purposes of step two. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

Here, the ALJ determined that Jensen's digestive track issues did not qualify as a severe impairment because: 1) Examining physician Dr. Robert Schore had

14

determined, in October 2014, that Jensen's intestinal conditions did not prevent her from working; 2) Jensen had reported to her health care providers, in December 2015, that her episodes of diarrhea occurred only periodically, and lasted less than a week; and 3) Jensen's colonoscopy in March 2017 had showed no significant abnormalities. (Doc. 11 at 17, 698, 1941). The ALJ did not err when she concluded that Jensen's digestive track issues did not qualify as a severe impairment.

The ALJ determined that Jensen's migraine headaches did not qualify as a severe impairment because: 1) Dr. Schore's suggestion in 2014 that Jensen's migraine headaches may prevent her from working was based solely on Jensen's comments regarding her headaches, and was not based upon any physical or medical findings; 2) Jensen did not include migraine headaches on her "Active Problem List," when she met with her health care provider on December 16, 2015; and 3) Jensen made no mention of migraine headaches when she met with her examining health care provider in February 2017. (Doc. 11 at 17, 22, 96-99, 1938). The ALJ did not err when she concluded that Jensen's migraine headaches did not qualify as a severe impairment.

### D. Disability Rating Assigned by the Veterans Administration

The VA assigned Jensen a disability rating of 100%. (Doc. 11 at 43, 491-493). The VA declared Jensen unemployable as of January 27, 2014, due to her impairments. (Doc. 11 at 314). The ALJ acknowledged the VA's disability determination, but did not give it significant weight. (Doc. 11 at 25). Jensen argues that the ALJ erred when she failed to assign significant weight to the VA's disability rating.

An ALJ must consider a VA disability rating in reaching her decision. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). The VA's disability determination is generally given significant weight. *McCartey*, 298 F.3d at 1076. The ALJ may discount the VA's disability determination, however, so long as the ALJ provides "persuasive, specific, [and] valid reasons for doing so that are supported by the record." *Id.*

Here, the ALJ reviewed, considered and weighed the medical evidence upon which the VA's disability rating was based. The ALJ stated that she discounted the VA's disability determination because: 1) the VA's disability determination was not based on Social Security Administration criteria; 2) the VA did not describe any specific functional limitations," or "objective findings" that supported its conclusion; 3) the VA's disability determination was inconsistent

with the physical findings of Jensen's treating providers; 4) Jensen displayed "minimal psychiatric symptoms;" 5) Jensen performed well on "mental status examinations;" and 6) the VA's disability determination was inconsistent with Jensen's daily activities. (Doc. 11 at 25). The ALJ provided persuasive, specific and valid reasons for giving the VA rating minimal weight. The ALJ did not commit legal error.

### E. The ALJ's Assessment of Jensen's Residual Functional Capacity

Jensen argues that the ALJ erred when she determined her residual functional capacity. Jensen argues that the ALJ erred by failing to consider all of her impairments.

Residual functional capacity is an assessment of a claimant's ability to perform work-related physical and mental work activities on a regular and continuing basis despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p. An ALJ must consider all of a claimant's impairments when making a residual functional capacity assessment, including impairments that are not severe. 20 C.F.R. § 404.1545(a).

The ALJ's assessment of Jensen's residual functional capacity is set forth on pages 17 through 27 of the ALJ's May 22, 2017, Decision. (Doc. 11 at 17-27). The ALJ's assessment addresses all of Jensen's physical and mental impairments,

17

including her impairments that are not severe. The ALJ did not error when she assessed Jensen's residual functional capacity.

## CONCLUSION

The ALJ's decision is supported by substantial evidence. The ALJ's decision is free of legal error.

## ORDER

1. The Commissioner's decision to deny benefits to Jensen is AFFIRMED.

2. This case is DISMISSED with prejudice.

3. The Clerk is directed to enter judgment accordingly.

DATED this 22nd day of May, 2019.

John Johnston
United States Magistrate Judge